IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## TONY CARRUTHERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 94-02797, 94-02798, 94-02799, 95-11128, 95-11129, P-25948
Carlyn L. Addison, Judge**

————————————————————————

### No. W2026-00706-SC-RDM-PD

————————————————————————

Tony Von Carruthers, a death-row inmate scheduled for execution on May 21, 2026, filed a motion requesting last-minute DNA testing of fingernail scrapings and bindings from the murder victims.[1] Mr. Carruthers sought an expedited ruling on the motion without an evidentiary hearing. After analyzing the request under the mandatory and discretionary provisions of the Post-Conviction DNA Analysis Act of 2001 (DNA Act), the post-conviction court denied the motion. Mr. Carruthers appealed to the Court of Criminal Appeals. Upon motion of Mr. Carruthers, this Court assumed jurisdiction pursuant to Tennessee Code Annotated section 16-3-201(d). Because Mr. Carruthers has failed to establish the statutory criteria for ordering analysis under the DNA Act, we affirm the judgment of the post-conviction court.

### Tenn. Code Ann. § 16-3-201(d); Judgment of the
### Shelby County Criminal Court Affirmed

Lucas Camerson-Vaughn, American Civil Liberties Union (ACLU) of Tennessee, Nashville, Tennessee; Maria DeLiberato, ACLU, Durham, North Carolina; and

---

[1] Mr. Carruthers also filed in the post-conviction court a "Motion for Order Compelling Disclosure," seeking a court order directing the Shelby County Medical Examiner to release the biological standards of a man whom codefendant James Montgomery allegedly identified as a participant in these crimes. The post-conviction court denied the motion, and the State asserts that Mr. Carruthers has no right to appeal the denial. We need not decide whether Mr. Carruthers has a right to appeal the trial court's denial of his motion because he has failed to establish statutory grounds for DNA testing. Accordingly, we conclude the issue is moot.

Melanie C. Verdicia, Quarles & Brady LLP, Tampa, Florida, for the Appellant, Tony Von Carruthers.

Jonathan Skrmetti, Attorney General and Reporter; Courtney Orr, Deputy Attorney General; and Benjamin Barker, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background Summary

In February 1994, Tony Carruthers, James Montgomery, and Jonathan Montgomery[2] killed Marcellos "Cello" Anderson, his mother Delois Anderson, and Freddrick Tucker and buried them beneath a casket in a Memphis cemetery. *State v. Carruthers*, 35 S.W.3d 516, 524 (Tenn. 2000), *cert. denied*, 533 U.S. 953 (2001). Mr. Carruthers and James were convicted of three counts of murder in a joint trial.[3] *Id.* The jury imposed a sentence of death for each murder. *Id.*

The proof at trial established that, while incarcerated in the summer of 1993, Mr. Carruthers shared his "master plan" to kidnap, rob, and murder Mr. Anderson. *Id.* In the fall, during a work detail at a local cemetery, Mr. Carruthers expressed to a fellow inmate that a grave would be a good way to hide a body if you killed someone, explaining, "[I]f you ain't got no body, you don't have a case." *Id.* The same inmate overheard Mr. Carruthers and James discussing their plans to rob Mr. Anderson because he made a lot of money dealing drugs. *Id.* When Mr. Carruthers was released from prison in late 1993, he told Jonathan Montgomery it would be best to wait until his brother James was released to carry out the plan. *Id.* at 524-25. James Montgomery was released from prison in January 1994, and the plan was carried out in February 1994. *Id.* at 525.

Multiple witnesses saw Mr. Carruthers and James with Mr. Anderson and Mr. Tucker on the evening of February 23. *Id.* at 525-26. Nakeita Shaw saw Mr.

---

[2] Because James and Jonathan Montgomery share a surname, we will refer to both by their first names for clarity. We intend no disrespect in doing so.

[3] Jonathan was also charged in this case. *Id.* at 524 n.2. Months before trial, Jonathan was found hanged in his jail cell. *Id.* James's conviction and sentences were later reversed, and his case was remanded for a new trial. *Id.* at 524.

Carruthers and James leading Mr. Anderson and Mr. Tucker to a Jeep. [4] *Id*. at 526. Earlier that night, Laventhia Briggs arrived at the home of her aunt, Delois Anderson, with whom she was residing. *Id.* Ms. Anderson was not at home, and it appeared to Ms. Briggs that Ms. Anderson had been interrupted while eating. *Id.* On the evening of February 24, Jonathan told Chris Hines they had stolen $200,000 and had killed "Cello and them" "out at the cemetery on Elvis Presley." *Id.*

On March 3, 1994, Jonathan led authorities to a grave in the Rose Hill Cemetery on Elvis Presley Boulevard in Memphis, where they found the three victims' bodies buried beneath a casket. *Id*. at 527 & n.5. Mr. Anderson and Mr. Tucker had been shot, and Ms. Anderson had been beaten and suffocated. *Id.* at 527-28. Although Mr. Anderson was known to wear "expensive jewelry" and carry large sums of cash, neither was found with his body. *Id.* at 524. After autopsies, the medical examiner opined that the victims had been buried alive. *Id.* at 527-28.

Alfredo Shaw saw the news report about the murders and called CrimeStoppers. *Id.* at 528. Mr. Shaw later testified to a grand jury that during a three-way call with Mr. Carruthers and another man, Mr. Carruthers asked Mr. Shaw to participate in the murders, saying each would earn $100,000 and a kilogram of cocaine. *Id.* at 528-29. Before trial, Mr. Shaw told the media he had lied to the grand jury about Mr. Carruthers's involvement in the murders. *Id*. at 528. Mr. Carruthers, who represented himself at trial, called Mr. Shaw as a defense witness. Mr. Shaw said he lied to the media because Mr. Carruthers had threatened him and his family. *Id.* at 529. Mr. Shaw testified that Mr. Carruthers confessed to the murders while they were jailed together before Mr. Carruthers's trial. *Id*. According to Mr. Shaw, Mr. Carruthers used Ms. Anderson to lure Mr. Anderson and Mr. Tucker to a meeting, and he then shot two of the victims, burned the Jeep in Mississippi, stole a car to return to Memphis, and buried the victims alive. *Id*. Mr. Carruthers also told him Ms. Anderson began screaming when Mr. Anderson and Mr. Tucker were forced into the grave, so Ms. Anderson was pushed into the grave too. *Id.* Mr. Shaw said Mr. Carruthers lamented that the bodies would never have been found if "'the boy wouldn't have went and told them folks.'" *Id*.

## Procedural History

After this Court affirmed Mr. Carruthers's convictions and sentences on direct appeal, he unsuccessfully pursued relief in state post-conviction proceedings and in

[4] Mr. Anderson had recently borrowed a Jeep, which was found destroyed by fire on February 25. *Id.*

federal habeas corpus proceedings. *See State v. Carruthers*, No. W1997-00097-SC-DDT-DD, 2026 WL 1257769, at *6–7 (Tenn. May 7, 2026) (summarizing Mr. Carruthers's litigation history in his competency-to-be-executed proceedings).

Mr. Carruthers has made multiple innocence claims during collateral litigation. In fact, such claims began in his original post-conviction proceedings during which Mr. Carruthers alleged trial counsel was ineffective for failing to retain a DNA expert to testify about blood found on a blanket-like cloth at the grave site that did not match the DNA of any of the victims or any of the three defendants. *Carruthers v. State*, No. W2006-00376-CCA-R3-PD, 2007 WL 4355481, at *38 (Tenn. Crim. App. Dec. 12, 2007). The post-conviction court rejected the claim, noting that those DNA results were "only very minimally helpful to [Mr. Carruthers]" and did not "negate all other proof in the case." *Id.* The court remarked that "it is rank speculation to assume that [the DNA evidence] indicates that a third party might have committed this crime. There is no proof as to the age of the blood, or any explanation of how the blood got on the piece of cloth." *Id.* The Court of Criminal Appeals affirmed the trial court's ruling, explaining that any DNA results from the blood on the blanket would be "inconclusive and would not have changed the outcome of trial." *Id.* at *40.

In 2011, Mr. Carruthers filed a motion based on the DNA Act requesting testing of a vaginal swab from Delois Anderson and a blanket collected from the crime scene. *Carruthers v. State*, No. W2012-01473-CCA-R3-PD, 2013 WL 3968787, at *1 (Tenn. Crim. App. Aug. 1, 2013). Mr. Carruthers argued that such testing would exclude him as the source of the DNA and exonerate him of the crime. *Id.* at *3. The post-conviction court dismissed the motion stating, "[I]t appears from the record that DNA testing has already occurred and[,] the results are only minimally helpful to [Mr. Carruthers]." *Id.* The Court of Criminal Appeals affirmed, explaining that there was no indication the biological material on the blanket was left contemporaneously with the murders. *Id.* at *4. It further concluded that, even if DNA analysis excluded Mr. Carruthers, it would "not in any way" provide a reasonable probability that Mr. Carruthers would not have been convicted. *Id.* at *5.

In 2021, Mr. Carruthers filed a pro se petition followed by an amended petition through counsel seeking fingerprint testing under the Post-Conviction Fingerprint Analysis Act of 2021 ("Fingerprint Act"). He alleged that, in 2010, James told an investigator that Mr. Carruthers was not involved and identified another man, Ronnie "Eyeball" Irving, as his accomplice in the murders. *Carruthers v. State*, No. W2026-00226-CCA-R3-PD, 2026 WL 1031140, at *6 (Tenn. Crim.

App. Apr. 16, 2026).[5] The post-conviction court summarily dismissed the petition, concluding that, even if fingerprints found at Ms. Anderson's home belonged to Ronnie Irving, such results would not have affected either the State's decision to prosecute Mr. Carruthers or the outcome of the trial. *Id.* at *8–9. The Court of Criminal Appeals affirmed. *Id.* at *10.

This brings us to Mr. Carruthers's eleventh-hour request for DNA testing. On April 9, 2026, less than two months before his scheduled execution, Mr. Carruthers filed in this Court a "Motion for Post-Conviction DNA Testing and Request to Appoint a Special Master Pursuant to Tenn. S. Ct. R. 12.4(E)." In his motion, Mr. Carruthers sought DNA testing and comparison of: (1) fingernail scrapings from Marcellos Anderson, Frederick Tucker, and Delois Anderson; (2) the bindings of Marcellos Anderson; and (3) the bindings of Delois Anderson (which include knotted pantyhose around her hand and the red socks knotted around her neck). This Court denied the motion, noting that Mr. Carruthers had not availed himself of an available procedural vehicle in the post-conviction court — the DNA Act. Order, *State v. Carruthers*, No. W1997-00097-SC-R11-DD (Tenn. Apr. 30, 2026).

On May 4, 2026, Mr. Carruthers filed the instant motion pursuant to the DNA Act in the post-conviction court repeating the requests for DNA testing and comparison he raised in his previous motion to this Court. On May 11, 2026, the post-conviction court denied Mr. Carruthers's motion, concluding he had failed to establish the statutory criteria entitling him to either mandatory or discretionary testing under the DNA Act. Mr. Carruthers appealed to the Court of Criminal Appeals and filed a motion asking this Court to assume jurisdiction of his appeal. We granted his motion and established a briefing schedule. As explained herein, we affirm the decision of the post-conviction court.

## Standard of Review

Appellate courts apply the abuse of discretion standard when reviewing a post-conviction court's decision on whether to grant relief under the DNA Act. *State v. Wilks*, No. W2014-02304-CCA-R3-PC, 2015 WL 5719926, at *3 (Tenn. Crim. App. Sept. 30, 2015); *cf. Alley v. State*, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *3 (Tenn. Crim. App. May 26, 2004). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an

---

[5] The sixty-day deadline to file an application for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure has not expired.

incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Black v. Strada*, 721 S.W.3d 223, 226 (Tenn. 2025).

## Analysis

### The Post-Conviction DNA Analysis Act of 2001

The DNA Act authorizes "a person convicted of and sentenced for the commission of first degree murder . . . [to] file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence." Tenn. Code Ann. § 40-30-303. Under the DNA Act's "mandatory" provision, the court *shall* order DNA analysis if it finds that:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. Under the DNA Act's "discretionary" provision, the court *may* order DNA analysis if it finds that:

> (1) A reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-305. "Under either the mandatory or discretionary provision, all four elements must be met before DNA analysis will be ordered by the court." *Powers v. State*, 343 S.W.3d 36, 48 (Tenn. 2011). Thus, a petitioner's failure to prove any one of the four criteria is fatal to the petitioner's claim, and the post-conviction court has the authority to dismiss the petition. *See Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. Apr. 24, 2003).

In ruling on a request based on the DNA Act, the post-conviction court considers all "available evidence, including the evidence presented at trial and any stipulations of fact made by either party." *Alley*, 2004 WL 1196095, at *3. The post-conviction court may also consider appellate court opinions from the petitioner's direct appeal or his appeals of prior post-conviction or habeas corpus actions. *Id.* Finally, the post-conviction court presumes the requested DNA analysis would produce results favorable to the petitioner. *Powers*, 343 S.W.3d at 55 n. 28.

In this case, the post-conviction court concluded that Mr. Carruthers failed to establish the first statutory criteria under both the mandatory and discretionary provisions. In conducting its analysis of these criteria, the post-conviction court, consistent with governing precedent, began "with the assumption that DNA will be obtained from the items and that the DNA will be linked to a known third party, meaning someone other than the victims, Mr. Carruthers, James Montgomery, and Jonathan Montgomery." It further presumed that "the DNA 'hit' may be related to another individual who participated in the crime or an individual who touched one or more of the items at another time (i.e. someone living with one of the victims or perpetrators, a retailer, or the actual owner of the items)."

But, even with those assumptions, the post-conviction court concluded that

Mr. Carruthers failed to establish "a reasonable probability that [he] would not have been prosecuted or convicted" as the first criterion of the mandatory provision requires. The court explained:

> It is unlikely that Mr. Carruthers would not have been prosecuted, even if a third party's DNA had been found at the crime scene. With (1) letters referring to "a master plan" that was "a winner," an indication of Mr. Carruthers'[s] intention to "make those streets pay me," and an announcement from Mr. Carruthers that "everything I do from now on will be well organized and extremely violent," (2) the statement of Mr. Carruthers that "that would be a good way, you know, to bury somebody, if you're going to kill them…. [I]f you ain't got no body, you don't have a case," (3) Mr. Carruthers'[s] statement that he and Montgomery could "rob" and "get" Anderson and Johnson once they were released from prison, (4) Nakeita Shaw's eyewitness account that she saw James Montgomery, Mr. Carruthers, and the two victims, Anderson and Tucker, leave her home in the Jeep Cherokee on the night the victims went missing, (5) the victims' bodies were found buried together in a pit that had been dug beneath a casket in a grave in a Memphis cemetery (Mr. Carruthers had previously been assigned to a work detail at a local cemetery where he helped bury a body), (6) Mr. Carruthers' confession to Alfredo Shaw, and (7) the likelihood that more than one participant was involved in the homicides given the number of victims and the movement of the victims, the [c]ourt does not find that a reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis. There is simply not "a probability sufficient to undermine confidence in the outcome." The Court finds that prong (1) of T.C.A. §40-30-304 has not been met.

Indulging these same presumptions, the post-conviction court also found that Mr. Carruthers failed to establish the first criterion under the discretionary provision of the statute. The post-conviction court explained its analysis as follows:

> Similarly to the analysis of [the first criterion of the mandatory provision], the Court does not find that a reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict more favorable if the results had been available at the proceeding leading to the judgment of conviction.

Given the facts of this case as noted above, it is unlikely that the verdict in Mr. Carruthers'[s] case would have been more favorable, even if a third party's DNA had been found at the crime scene. Again, there is simply not "a probability sufficient to undermine confidence in the outcome." The Court believes the convictions would remain intact.

. . . .

When analyzing whether the sentence may have been more favorable, the analysis is somewhat more complicated. In the analysis, the trial facts remain the same. The Court finds this crime was planned over a period of time and was not a spur-of-the-moment idea. The Court also finds the number of victims and the opinion that the victims were buried alive would weigh heavily in favor of death sentences. Finally, the Court finds that Deloris Anderson was a truly innocent victim in this case. There is clearly sufficient proof and a solid basis for the jury returning death sentences in this case.

On the other hand, it is plausible that a DNA profile of a third party at the crime scene (especially on the ligatures) could cause residual doubt in the minds of the jurors due to another participant possibly being involved and not prosecuted and could produce questions about Mr. Carruthers'[s] specific role in the offenses. Each of these possibilities may have given at least one juror a reason to not vote for death in this case. The question for this part of the analysis is whether the DNA profile of a third party at the crime scene would result in "a probability sufficient to undermine confidence" in the death sentences.

The Court finds that evidence of a third party's DNA profile at the crime scene would not result in "a probability sufficient to undermine confidence in the" death sentences, given all of the facts of the case at trial. The Court finds that a reasonable probability does not exist that analysis of the evidence will produce DNA results that would have rendered the petitioner's sentences more favorable if the results had been available at the proceeding leading to the judgment of conviction.

We conclude that the post-conviction court did not abuse its discretion by concluding that Mr. Carruthers failed to meet the first criterion of both the mandatory and discretionary provisions of the DNA Act. As the post-conviction court

explained, even presuming the DNA analysis revealed exactly what Mr. Carruthers claims, these results would not amount to a reasonable probability that he would not have been prosecuted or convicted or a reasonable probability that his conviction or sentence would have been more favorable. Overwhelming evidence remains of Mr. Carruthers's involvement in planning and perpetrating the murders, and this evidence would not be undermined by favorable DNA results. This evidence clearly supports both Mr. Carruthers's convictions and the aggravating circumstances the jury found when it imposed sentences of death for each murder conviction. As summarized above, the State's evidence revealed that Mr. Carruthers devised a "master plan" to commit these crimes months in advance. After James was released from prison, Mr. Carruthers and the brothers carried out the plan. Jonathan later led the authorities to the exact location where the victims had been buried alive. Even if DNA results and comparison suggested another person was possibly involved in these crimes, such a suggestion does not undermine the significant remaining evidence against Mr. Carruthers. Because Mr. Carruthers failed to satisfy the first criterion of both the mandatory and discretionary provisions of the DNA Act, the post-conviction court did not abuse its discretion in denying the motion. This conclusion alone is a sufficient basis for this Court to affirm the post-conviction court's decision. *Powers*, 343 S.W.3d at 48; *Buford*, 2003 WL 1937110, at *6.

We also agree with the post-conviction court's conclusion that Mr. Carruthers failed to establish the fourth criterion of the mandatory and discretionary provisions of the DNA Act,[6] which requires the petitioner to show that the request for testing is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice. Tenn. Code Ann. §§ 40-30-304(4), -305(4). In determining Mr. Carruthers failed to make this showing, the post-conviction court reasoned:

> On one hand, the motion is clearly an attempt to demonstrate that Mr. Carruthers is innocent of the offenses for which he has been convicted. In fact, Mr. Carruthers for over thirty years has claimed his innocence, and Mr. Carruthers believes that further DNA testing may prove his innocence.

> On the other hand, and perhaps more apparent, it clearly appears that filing this motion on May 4, 2026 (only seventeen days before Mr. Carruthers'[s] scheduled execution) could very well be an attempt to

---

[6] The fourth criterion is identical under both the mandatory and discretionary provisions.

unreasonably delay the execution of Mr. Carruthers'[s] sentence. This motion could have been filed years ago. This procedural avenue became available in 2001. James Montgomery allegedly identified Ronnie Irving as an additional suspect in 2010 or 2011. This motion could have been filed when Mr. Carruthers filed his *pro se* motion for fingerprint analysis (September 21, 2021). This motion could have been filed shortly after September 30, 2025, when the execution date was set. This motion could have been filed when counsel for Mr. Carruthers filed his *Reply to State's December 23, 2025, Response to Pro Se Petition and/or Amended Petition* regarding the fingerprint motion (December 31, 2025). There is no explanation provided or that the Court can surmise as to why Mr. Carruthers waited until April, 2026, to bring this to this Court's attention if not for the purpose of unreasonably delaying the execution of the sentence or administration of justice. This Court finds the filing of this motion is an attempt to unreasonably delay the execution of Mr. Carruthers'[s] sentence. Prong (4) has not been met.

We agree with the post-conviction court that Mr. Carruthers has had a procedural avenue to seek DNA testing since 2001, yet he waited to file this motion until just over one month before his scheduled execution and almost seven months after this Court set his execution date. The facts fully support the post-conviction court's determination that Mr. Carruthers brought his DNA motion for the purpose of delaying his execution and, in turn, failed to establish the fourth criterion of both the mandatory and discretionary provisions of the DNA Act. Again, we conclude that the post-conviction court did not abuse its discretion in denying the motion for DNA testing.[7]

## Conclusion

For the reasons set forth above, we affirm the post-conviction court's judgment.

This opinion is not subject to rehearing under Rule 39 of the Tennessee Rules

---

[7] Mr. Carruthers's contention that the post-conviction court erred by failing to hold an evidentiary hearing on his motion is factually and legally without merit. Mr. Carruthers asked the post-conviction court to "grant his motion without the need for an evidentiary hearing." And this Court has held that post-conviction courts are not required to hold an evidentiary hearing to adjudicate requests for testing under the DNA Act. *Powers*, 343 S.W.3d at 56.

of Appellate Procedure, and the Clerk is directed to certify this opinion as final and to immediately issue the mandate.

This opinion is designated for publication pursuant to Rule 4 of the Rules of the Tennessee Supreme Court.

PER CURIAM